Casey, C. J.,
delivered tbe opinion of tbe court:
Tbe claimants in this case were, on tbe 1st day of June, 1865, tbe owners of a side-wheel steamboat called Belle Peoria. She was then lying at ber wharf in tbe city of St. Louis. Tbe owners were applied to by Colonel Metcalf, United States quartermaster at St. Louis, to take a cargo of military supplies to Fort Berthold, on tbe Missouri river, about 1,700 miles from St. Louis. They declined, on account of tbe lateness of tbe season. He then ordered them to prepare for tbe trip, and informed them that in case of refusal tbe boat would be impressed. Tbe owners protested, but, under tbe orders, got tbe boat in readiness, put on tbe cargo, and left St. Louis on tbe 3d day of June, 1865.
She arrived at Fort Berthold on tbe 22d day of July, 1865, discharged ber cargo, and started on ber return trip on tbe 24th *136 of tbe same month. She proceeded until the 26th, when a high wind sprung up, and she, in attempting to land, was blown aground.' All efforts to get her off proved unavailing. After making all the effort that was deemed advisable, and finding it impossible to get her off until a rise should occur in the river, the officers and crew left her, leaving several persons iii charge.
The crew left her on the 31st of July, 1865, leaving on board one engineer, one mate, and three watchmen, who were to take care of the boat. The officer in command at Fort Eice also detailed and sent a military guard to protect -the boat.
The facts being communicated to the owners at St. Louis, they made their protest, in order to cover the insurance. The boat remained aground until about the 15th of April, 1866, when by an i&e-freshet in the Missouri river she was swept off and totally destroyed.
Captain Metcalf, on seizing the boat, fixed her per diem compensation at $272. She was paid at this rate until the 10th day of August, 1865, being the time when information arrived at St. Louis that she was aground and the captain and part of the crew returned. She was also paid from the 10th of August until the 30th of September at the rate of $101 per day. This was while the engineer, mate, and watchmen remained on board. From the 30th of September until the 30th of November, 1865, vouchers were issued to the claimants at the rate of $80 per day, which have not been paid. No vouchers were issued after that date. The amount of these vouchers, together with compensation at the same rate of $80 per day until the time of the destruction of the boat on the 15th of April, 1866, is claimed in this suit, being an aggregate of $15,760.
They also claim the sum of $5,401 41, for expenses incurred in the spring of 1866 in sending a crew up the’ river, from St. Louis, to make efforts to save the boat. The proof shows that this crew was sent with the knowledge and consent of the quartermaster, and was done to protect the interests of the United States as well' as those of the claimants. This crew left St. Louis on the 3d of April, and arrived at where the boat had been about the 18th of the same month. The boat had been destroyed about the 15th of April, some three days before their arrival. They did not return to St. Louis until the 3d day of June, and charge for the whole intermediate time. While they *137 were only 15 days in going up, they occupied 45 days getting back. Tbe wages charged appear to us unreasonable and extravagant, and not justified by anything in the nature or character of the services rendered; nor do the proofs show that they were either customary or reasonable charges.
After the destruction of the boat, the claimants applied to the Third Auditor, under the provisions of the act of 1849, for payment of her value. This claim was allowed, and her value fixed at $30,000, and which amount was duly paid to the claimants. The claim for the per diem compensation, from' September 30 until the time when the boat perished, including the vouchers'until November 30, 1865, was rejected, as well as the claim for money expended in efforts to save the boat.
We do not think the United States were liable for per diem compensation of the boat after the claimants abandoned her aground in the river, and especially after they made their protest on the 14th of August, 1865. Yet they have been paid until the 30th of September, 1865. This is probably the date when the engineer, mate, and watchmen left the boat. After that time the boat was wholly in the charge of the United States until she perished, and at their risk. She perished from the accident wdiich then befell her as the proximate cause. The United States, under the acts of Congress, stood in the relation of insurers of the property to the claimants. They have fulfilled that obligation by paying for her loss and destruction. When they did so it related back to the commencement of the accident and continuing peril by which she finally perished. They are not liable to demurrage in the mean time. For that already paid after the 10th of August, 1865, there has been no set-off pleaded by the United States, and no claim put in for reclamation by the United States. It was allowed and paid by the quartermaster in charge of the business, and his accounts have been settled and allowed by the accounting departments. We do not think, under these circumstances, that these settlements ought to be disturbed. The whole matter was before them, and they exercised their best judgment upon the matter, and the government do not ask us to overhaul them. The only valid ground of claim, so far as we can see, that is presented in the case, is that for the expenditures made in efforts to save the boat. These efforts having been undertaken partly at the instance of the officers of the United States, and solely for their *138 benefit, it is but just and seasonable that the United States should reimburse the claimants for any fair and proper expenditure made in that behalf. The time spent in the expedition, the wages of the persons sent, and the whole expenditure, was, in our judgment, unreasonable and extravagant; and while there is no precise and definite evidence in the record by which we are enabled to make a close and exact calculation of what would have been a fair and reasonable expenditure under the circumstances, yet there is proof that enables us to approximate to that amount, and thus to do substantial justice in the case. This amount we have fixed at $2,500, and for this sum we direct a judgment in favor of the claimants. '