Wright, J.,
delivered the opinion of the court:
Plaintiff OAvned a steamship which he fitted and equipped, for use in the United States military service at sea, as a Avater boat to carry fresh water to be supplied to the troops in transports Avhile upon the ocean. He entered into a written contract with defendant in which sendee of the ship Avas provided for at a compensation of $175 per day, in which it Avas stipulated among other things that the Avar risk should be borne by the United States, the marine risk by the owner; the defendant to furnish the necessary fuel to propel the vessel until returned to plaintiff at Mobile, Ala., in the same order as when received, ordinary Avear and tear, damage by the elements, collision at sea and in port, bursting of boilers and breakage of machinery excepted; the A^essel Avhen laden to proceed without delay to such ports or places as ordered by the proper officer of the Quartermaster’s Department and defiver the cargo to such ports and places to Avhich the A^essel is ordered to proceed.
•The vessel Avas accordingly loaded Avith fresh Avater, and in charge of the OAAUier’s master and creAv, and, as properly directed, reported to the quartermaster of the United States at Tampa, Fla., June 10, 1898, and from there Avas ordered to accompany the transport fleet conveying General Shafter’s *372 ■army to Cuba. On the arrival of the fleet off Siboney and Daiquiri, on the south coast of Santiago, the troops .on the transports needed supplies of fresh water; there was no harbor or port shelter at that place wherein the delivery of water from the water carrier to the transports could be accomplished, and the delivery could only -be effected where the transports then lay or not at all. The transports Avere then laying to in a heavy, lumpy sea, Avhen plaintiff Avas required by the quartermaster to deliver Avater upon them for the use of the troops. Plaintiff protested to the quartermaster, insisting that to approach the transports and supply them with Avater in the conditions of the sea then existing would damage his ship. The quartermaster insisted, and assured the master that the Government would put the ship back in condition again. The Avater Avas then delivered to the troops on the transports, and in doing the work plaintiff’s ship was injured and damaged by contact with the transports in consequence of the roughness of the sea.
At the end of its service plaintiff’s ship 'arrived at Mobile, Ala:, and the quartermaster in charge at that place Avas directed to discharge her, call upon the representath'-e of the owner, and with him fix the price, if any is to be paid, for putting, the ship-in the same condition she Avas in when chartered by the Government as a Avater boat, and to report by wire for the approval of the Secretary of War. The owner declined to receive the A^essel until all repairs were completed, and the local quartermaster Avas then instructed by the Quartermaster-General to agree with the representative of the owner as to cost of repairs not clue to marine risk and report same. The local quartermaster obtained the services of a marine surveyor, and upon examination ascertained the amount of damage to the ship for the injuries so received to be $8,000, and this Avas reported to the Quartermaster-General, Avho refused payment to plaintiff.
This suit is to recover the damages so occasioned to the ship, and the first insistence is that, as the local quartermaster represented to the OAvner that he had authority to settle the claim for damages, and that the OAvner had agreed to accept $8,000, and then received the discharge of his vessel, these facts, considered together, constitute an agreement, valid and *373 binding upon the defendant, to pay the sum agreed upon. ■The vice in this contention is that the local quartermaster had no authority to make an agreement binding upon the defendant to vary the terms of the charter party, and it is also a familiar principle that the authority of an agent to bind his principal can not be proved by the mere representations of the agent himself. So the'fallacy of this contention appears in its own statement and may be dismissed without further consideration.
There only remains for our determination the liability of the defendant, upon the contract of the parties, for the damages incurred to the vessel of the plaintiff. This may properly be done only by ascertaining the intention of the parties at the time the contract was entered into and then bj1, giving-such intention its due effect. Upon this point we think the case clears itself, and we need only look at the plain words of the contract itself, in the light of the surrounding circumstances thereby disclosed. The plaintiff fitted and equipped his ship as a water boat or tender for transports containing United States troops, for the purpose of supplying such troops with water. By his contract he undertook to deliver water at such places as ordered. At the time the contract was made no one knew when or where such delivery would be required. To accomplish the purposes of the contract it will be presumed the parties designed the water to be supplied to the soldiers whenever or wherever they might be at sea, if necessity required. The contract puts no restriction upon time or place, but such delivery to be made as ordered by the proper officer of the Quartermaster’s Department. By his contract plaintiff selected the person who would decide the time and place, and the assurance of that officer that the defendant would repair the ship did not enlarge the .terms of the contract in that respect.
Nothing is said in the stipulations of the contract that water should be delivered in the calm of the sea or in harbor's, or port shelters. If such a stipulation had been contained in the contract, we can well see how in the exigencies of >var and wave the objects of the contract could have been wholly defeated, and the troops on the transports deprived of the' *374 use of the water provided for their necessities. It will be presumed that such a stipulation was designedly omitted, and, that being true, it follows that it was the intention of the parties that the water was to be delivered as it was, although attended with risks imposed by a choppy sea. Plaintiff, by the express stipulation of his contract, assumed marine risks, and that burden should be considered in the light of the service to be performed, including the danger incident to the delivery of water to the transports at any place directed b}r the proper officer. The defendant assumed only war risk, and there' can be no just pretense that the injury to plaintiff’s ship was incident to any act of war.
By proper interpretation of the contract the only repairs the defendant agreed to make were such as were necessary as a result of its own fault, or the negligent acts of the soldiers, or such as might be occasioned by belligerent operations, offensive or defensive. No injuries of such description occurred. The injuries that did occur, and which occasioned the damages complained of, were but the ordinary wear and tear incident to the service upon which plaintiff voluntarily entered and which was required of him by his contract, and from which that instrument exempts the defendant from liability.
In conformity to the views we have expressed, the petition DÍ the plaintiff will be dismissed.