Booth, J.,
delivered the opinion of the court:
This is a suit to recover damages for the alleged ill us© and abuse of a chartered steam vessel. The claimant, a Connecticut corporation, on April 29, 1898, entered into a charter *383 party with the defendant concerning the transportation of troops and supplies to be used in the war with Spain. The vessel, the Florida by name, used for this purpose, was a vessel of little over 1,700 registered tons, of somewhat limited carrying capacity, being usually employed by the claimant in the transportation of freight and passengers in southern ■waters. While lying at anchor in the port of Ponce, P. It., she was ordered to afford assistance to the steamship Massachusetts, at the time aground at the entrance of the harbor. The captain of the Florida protested against the order and the service, and thereupon the command of the vessel was assumed by a United States naval officer acting under orders, and the service performed. Services of a similar character and under almost exactly the same circumstances were subsequently required of the officers in command of the vessel when the steamship Manitoba became dangerously stranded on the coast of Ponce. The result of this extraordinary and unusual use to which this comparatively small vessel was put caused her serious injury and damage, requiring the expenditure of a large sum of money in repairs and the loss of considerable time in making the same. The record presents the usual question, most always quite difficult to determine : Was the charter party a demise of the vessel or a contract for service? The language of the charter party is not unusual and in no way specifically and expressly indicates that any other than the usual construction should obtain in determining the rights of the parties thereunder.
In Reed v. United States (11 Wall., 601) the court said:
Unless the ship herself is let to hire, and the owner parts with the possession, command, and navigation of the same, the charterer or freighter is not to be regarded as the owner for the voyage, as the master, while the owner retains the possession, command, and navigation of the ship, is the agent of the general owner and the mariners are regarded as in his employment and he is responsible for their conduct.
The above rule, predicated upon a long line of decisions, taken in conjunction with another and correlative one, “ that courts of justice are not inclined to regard the contract as a demise of the ship if the end in view can conveniently be accomplished without the transfer of the vessel,” make it extremely *384 difficult to construe a charter party, in the absence of express words to the contrary, as other than a contract for service. Except as to the rule above stated, in the construction of a contract of affreightment, the same rules applicable to the ascertainment of the intention of the parties to any written contract obtain. (Reed v. United States, supra, and cases cited on p. 601; Beleher v. Caffer, 11 Law J. C., p. 275.) Claimant contends that the phraseology of the charter party, technically construed, indicates an intention to demise the vessel. It is true the words employed, viz, “ grant and let,” “ take,” “ take the steamship Florida,” are appropriate words of demise, and constitute an essential element in arriving at the intention of the parties to the charter party, but the controlling principle, the fundamental and definitive conclusion, rests upon an ascertainment of who retains the possession, command, and navigation of the vessel. (Leary v. United States, 14 Wall., 610.) The authorities sustaining this proposition are too numerous for citation.
Subjecting the facts before us to the decisions cited in so far as the charter party is concerned, it is a contract for service and not a demise of the vessel. In the preliminary negotiations pending the execution of the charter party the claimants on April 20 and 21,1898, wired the defendant respecting the compensation for the vessel. It will be observed that the message of April 21, 1898, expressly defines the conditions of the offer of the preceding day. This offer was declined by the defendant, as the subsequent charter party shows, thus indicating a clear intention to escajie responsibilty for the vessel and running expenses, including the crew, the charter party providing for increased compensation and decreased responsibility.
The charter party provided that the vessel should be officered and manned by the owners, and they further agreed to maintain her at their expense during the continuance of the contract. The compensation agreed upon was per diem.
At the time of the execution of the charter party the defendants were engaged in war with Spain. The Florida was one of many passenger and freight vessels chartered to convey troops and supplies to Cuba and Porto Rico, the charter *385 party expressly limits her use to such a purpose. It is obvious that the defendants intended, and the claimants did not expect, any other use of the vessel. The defendants had neither the time nor purpose to engage in transportation enterprises; they were alone concerned in the immediate and safe dispatch of their troops and munitions of war into enemy territory. The vessel was not to be refitted and equipped with armament, nor in any wise employed in military maneuvers.
There was nothing in the nature of the service, or the object of the voyage which required the vessel to be absolutely under the control and subject to the orders of the charterers. She was to take such cargo as the defendants prescribed to such ports and places as ordered by the proper military officers and there discharge the same. The transaction was a simple one of transportation from place to place, cargo limited and identified, responsibility for crew and vessel, except war risk, expressly repudiated. The command and navigation rested with the claimants’ officers furnished and paid by it, and possession rested with them as evidenced by the captain’s protest against the performance of the service resulting in her injury. (Donald v. The United States, 39 C. Cls. R., 357.)
No one of these circumstances standing alone would be sufficient to determine the character of the transaction; taken together, however, and keeping in mind the judicial injunction to follow the construction, if conveniently possible of contract of service, we think the construction herein in harmony with the cases cited on the briefs. There is an apparently endless chain of authorities upon this subject. The rules of construction applied are firmly established and inflexible. The decision in each case depends upon the peculiar facts and circumstances surrounding the transaction, and in consequence thereof it is difficult to determine with great accuracy into which class a charter party falls. In the class of cases relating to the charter of merchant vessels, wherein the parties are engaged in water transportation for profit, it seems reasonably certain that courts have not' hesitated to construe the charter party a demise of the vessel. *386 It would not.be accurate to say that in some instances vessels chartered for transportation of troops and munitions of war have not likewise been considered as a demise. In fact always so held where nature of the service and attainment of the object of the voyage renders the charterers’ absolute command and control necessary. (The Volunteer, 1 Sum., 551; Desty on Shipping and Admiralty, pp. 204-205.)
In the case of Propeller Company v. The United States (14 Wall., 670), a case somewhat similar to the present, the Supreme Court held that the optional clause of purchase contained in the charter party vested in the defendants an equitable interest in the vessel. It is true the court said, “ The agreement between the plaintiffs and the United States was not a mere contract of affreightment,” but the controversy did not involve that issue, and the case turned on the measure' of damages due because of defendants’ express assumption of the war risk. The theory of a demise is predicated upon temporarily absolute title, ownership pro hae vice, with its attendant responsibilities and liabilities. We think that there is nothing inconsistent with the doctrine of an equitable interest in the res as distinct from the interest conveyed by a demise of the vessel.
In Reed v. United States (supra), where the owner of a vessel under direct threats of impressment was directed to get her ready for a voyage for the transportation of military supplies, the Supreme Court declined to construe the contract other than one of simple affreightment. The language used by the court in the case of Donahoe v. Kettell (7 Fed. Cases, p. 878) referring to charter parties for the transportation of troops in time of war as falling unmistakably into the class of cases wherein the transaction is held to be demise, will hardly be claimed as decisive. It was used by way of illustration, is clearty obiter so far as the case was concerned, and its use in the case rests upon the sentence preceding it, and when considered with the previous statements of the learned justice simply upholds the well-established rule as to the construction to be given charter parties.
Taking the charter party as a whole, considering the circumstances under which it was made, the uses for which the *387 vessel was needed, and the respective situations of the parties at the time, we think it falls within the class of contracts for service and not for hire and the liability of the defendants is limited to contracts of the former class. (Reybold v. United States, 15 Wall., p. 202.)
A second proposition advanced by claimants goes to the covenants of the charter party irrespective of the question heretofore considered. Clause VII of the charter party provides as follows:
“ The United States will furnish all the fuel necessary to propel the vessel, if a steamer, until the said vessel is returned to the said company at Port Tampa, Fla., in the same order as when received; ordinary wear and tear, damage by the elements, collision at sea and in port, bursting of boilers and breakage of machinery excepted.”
The findings show that the defendants did not return this vessel in accordance with the provisions of Clause VII, and were this jurisdiction one wherein a litigant might waive a tort and sue in assumpsit the above contention would be exceedingly efficacious. The findings show that the injury suffered by claimants’ vessel was due to the unlawful acts of defendants’ agents, which were tortious in character, performed despite the protest of the captain in charge of the vessel, by a naval officer detailed for the particular purpose, and in disregard of the express covenants of the charter party.
The case of Schultz v. United States (3 C. Cls. R., 56) cited in support of claimants’ contention was decided without an opinion in January, 1868, and for some reason never appealed. The case of Reed v. United States (4 C. Cls. R., 132), decided by this court about one year later, wherein the court followed the decision in the Schultz case (supra), was reversed by the Supreme Court in 1870, and hence the citation is valueless. In the case of Clark v. United States (9 C. Cls. R., 377) the charter party expressly provided for the assumption of “war and all other risks.” In The Meteor case (10 C. Cls. R., p. 248), the jurisdiction of the court was by special legislation, and the special act conferring the same limited and defined the scope of the inquiry and the extent of the liability. The United States having declined to recog *388 nize its liability for the tortious acts of its agents, except in special cases and in specific instances, the claimants are without relief on this contention under our general jurisdictional act. (Morgan v. United States, 14 Wall., 531.)
A small item for the loss of five boats, about which there is no serious controversy, is clearly proven, and the defendants having assumed the war risk are liable therefor.
Other questions are discussed in the briefs of counsel. Under the opinion of the court their consideration is unnecessary. The questions of demurrage and military seizure fall within the above conclusions and are disposed of by the opinion.
Judgment will be awarded the claimants for five hundred and seventy-four dollars ($574). It is so ordered.
Howry, J., did not hear this case and took no part in the decisión.